## John Glassner *v.* John Wheaton and others.

Although personal property cannot, without the consent of a person holding a lien thereon, be removed from his possession, upon a levy under execution against the owner, yet it may be sold in execution, subject to the lien; and, *it seems,* the lien holder may be required to permit its exposure for sale in that manner.

So, if the lien holder voluntarily surrenders the property to the officer charged with the execution against the owner, the officer may remove and sell the same; and where the temporary custody of the property, prior to the sale, is committed to the execution plaintiff, the possession thereof by the latter is lawful, as between him and the owner, while the judgment remains unpaid.

But if the execution plaintiff accepts payment of the judgment, and agrees thereupon to return the property to the lien holder, the right to proceed to a sale is gone, and if he sell, he will be liable as for a conversion.

The sale being an actual conversion, no demand is necessary before suit brought.

Otherwise, while the possession continues lawful, a demand, in such case, being necessary to sustain an action in the nature of trover.

Although a transfer of personal property may be fraudulent as against creditors, it is nevertheless valid as against the assignors and all other persons.

The assignee may, therefore, discharge the claims of the creditors, and maintain an action against a creditor for a conversion of the property by selling the same after such claims have been paid.

Where the grounds of an appeal, prosecuted by one party, are insufficient, this

Glassner *v.* Wheaton.

court, unless the other party has also appealed, can only affirm the judgment, although the case would have justified a recovery for a larger amount than is awarded in the judgment.

ACTION for the conversion of a wagon. On the 4th of October, 1853, one Hamel, for whom it had just been manufactured, executed and delivered to the plaintiff, under seal, a bill of sale of this and other personal property, the consideration being the cancellation of a note held by the plaintiff against him, for borrowed money. The wagon was retained by one Stuart, the maker, for the price due him, and no change of possession followed the sale to the plaintiff.

The next day, October 5th, an execution upon a judgment against Hamel was issued to a constable, at the suit of the defendants, and the wagon was levied upon. Stuart, having refused to surrender his possession without payment of his lien, received from the defendants about $130 in discharge thereof, and then delivered the wagon to them, upon a written order of the constable.

On the 30th of October, Hamel paid the amount of the judgment—about $30—to the defendants personally; and the custody of the wagon having been committed to them, they agreed to return it *to Stuart.* In the mean time, however, the officer had advertised and prepared for a sale under the execution; and on the 31st of October, the wagon was sold at auction, for about $200.

Without making a demand, the plaintiff thereupon brought suit in the Sixth District Court, and recovered a judgment for $30 and costs. The defendants appealed.

*Abram Wakeman* and *John J. Latting,* for the defendants.

BY THE COURT. WOODRUFF, J.—It appears, by the evidence, that one Stuart had made a wagon for the assignor of the plaintiff, D. Hamel, for which he was to receive $75 and another wagon.

Upon the issuing of an execution in favor of the defend-

ants against Hamel, a levy was made upon this wagon. As between the defendants and Stuart, neither the defendants nor the officer had any right to take the wagon from the possession of Stuart, without his consent. He had a lien upon it for the price which he was entitled to receive therefor. The defendants had, however, a right to sell the wagon, subject to Stuart's lien, and might have required Stuart to yield, so far as to suffer the wagon to be exposed to sale in that manner.

So, if Stuart was willing to give up the possession to the officer, the wagon might be removed by the latter and sold. And as between the defendants and Hamel, the possession of the defendants (to whom the temporary custody of the wagon, prior to the sale, appears to have been committed) was lawful.

But if the defendants thought proper to accept payment of the judgment, and agree thereupon to return the wagon to Stuart, their right to proceed to a sale was gone, and upon such sale they were liable as for a conversion.

Nor after such a sale was any demand necessary. Regarding their possession before the sale as lawful, they could not, without a demand, have been proceeded against in this action; but a sale *after payment of the judgment* was an actual conversion, and where there is an actual conversion no demand is necessary. The result is, that if Hamel had himself been plaintiff herein, his right of action, after payment of the judgment, was complete, although it may be true that he could recover no more than the value of his interest in the wagon.

No injustice then is done to the defendants; the doubt is, whether the proof does not show that the interest of Hamel was worth $70, instead of $30, the amount allowed as damages by the court below.

Without inquiring into the effect of a transfer by Hamel to the plaintiff, on the 4th October, the day before the execution was issued, it is sufficient to say, that even though fraudulent as against these defendants, it was good as against

Hamel and all other persons, not being creditors of Hamel, and therefore, upon the payment of the judgment, the plaintiff was entitled to all of Hamel's interest in the wagon.

The defendants cannot complain of the judgment; and although it is doubtful whether the court below ought not to have awarded a larger sum, yet, as the plaintiff has not appealed, we cannot award a recovery of a larger amount.

The judgment should be affirmed.